### GOLSON v. HOLMAN.

1. Where a Circuit Judge directs a defendant executor to pay over the balance found in his hands on an accounting, within sixty days after a personal service of a copy of this order upon him, and he does not appeal therefrom nor comply, and a succeeding judge directs defendant to show cause why he should not be attached for contempt, and he fails to answer the rule—he is guilty of a contempt of court.
2. But the court has not power to direct the defendant, on such failure to show cause, to be imprisoned until the debt is paid, for that would be imprisonment for debt, which the constitution prohibits.

Before ALDRICH, J., Orangeburg, September, 1887.

This was an appeal from an order on a rule to show cause, directing defendant to be imprisoned until he should pay over an amount found to be in his hands as executor by a former order in the cause. The grounds of appeal raised some points not considered in the opinion, and also the point that the order of Judge Aldrich was in effect an imprisonment for debt.

*Mr. Thomas M. Raysor*, for appellant.

*Messrs. Lathrop & Wannamaker*, contra.

February 1, 1888. The opinion of the court was delivered by MR. CHIEF JUSTICE SIMPSON. The appellant, Holman, was sued for an accounting as executor of the will of William Golson, deceased, by the respondent, the widow of the said Golson, and the sole legatee under his will. The appellant, though duly

served with the summons and complaint, failed to answer or appear. At the May term of the court, 1886, for Orangeburg County, in which the action was brought, his honor, Judge Witherspoon, on motion, referred the case to the master, directing him to take an accounting, and requiring the appellant to produce before said master upon oath all the books, papers, accounts, deeds, and other writings in his custody and relating to the estate of the said William Golson, deceased, and also that creditors be called in. Under this order the master gave notice of a reference by order for September 16, 1886, in which the appellant was directed to appear and account, producing all papers, books, &c., in his custody and control relating to the said estate. To this reference the appellant again failed to appear. The accounting, however, proceeded, and the master found a balance against the appellant of eight hundred eighty-eight dollars and twenty-eight cents ($888 28), on the 1st of January, 1887, a statement of which accounting was made up and annexed to the master's report to the court. The report also brought to the attention of the court the fact that appellant had been adjudged in contempt of the Probate Court in failing to make returns and to produce his books and papers under an order directing him to do so.

The report of the master was confirmed by his honor, Judge Hudson, who, in addition to this confirmation, adjudged that the appellant should pay to the master the said sum of $888.28, within sixty days after personal service of said order, and that upon said payment he should be discharged from all further accounting as executor, &c. The appellant failed to make the payment ordered, and his honor, Judge Fraser, at the May term of the court, 1887, upon its being made to appear that a duly certified copy of the order, *supra*, of Judge Hudson had been personally served upon said appellant, and that he had failed to comply therewith, ordered the appellant to show cause before the court on the first day of the next term why he should not be attached for a contempt for said failure. A copy of this order was served on the appellant, and the appellant failing to appear and show cause at the said next term, his honor, Judge Aldrich, presiding, in the absence of appellant, ordered the rule to be made absolute,

and that the sheriff do forthwith attach the said appellant and commit him to the common jail, there to be safely kept until he should pay over to the master the said sum of $888.28, as required by the judgment of the court, or until he thence be discharged by due course of law. Under this order the appellant was arrested and committed to jail, where he is still imprisoned. From this order he has appealed upon several exceptions which will be found in the "Case," the main ground being, that his honor erred in committing the appellant to jail until the sum of money in question was paid to the master—the appellant contending that this was a mere debt, collectible by judgment and execution, and that his imprisonment until he paid this debt, was in violation of section 20, art. I., of the Constitution, and further, that his honor had no power, under the rule for contempt, to do more than to impose a fine with imprisonment upon failure to pay said fine.

There is no doubt that appellant was in contempt in failing to obey the order of his honor, Judge Witherspoon, requiring him to produce before the master all books, &c., in his custody relating to the estate of which he was the executor, on the accounting ordered. This, however, was not involved in the immediate proceeding before the court, as the rule ordered by Judge Fraser was not based upon this failure. No doubt, also, that *prima facie* he was in contempt in not appearing and answering the rule issued by Judge Fraser, without regard to the question whether the sum of money found against him could be enforced by a direct order requiring him to pay it to the master or not, or whether it was collectible only by judgment and execution. An order had been made by a court having jurisdiction of the matter. This order he had utterly disregarded and ignored, and whether within the power of the judge to make it or not, when served with a rule to show cause why he should not be attached for contempt in disobeying it, it was his duty to appear and then and there make the question of *ultra vires*, if so advised. This order, however, the appellant failed to notice, and his honor, Judge Aldrich, "because of said failure to appear and show cause," made the rule absolute, and granted the order appealed from.

Doubtless, too, he was in contempt *prima facie* for failing to

notice the order of Judge Hudson, which required him to pay over to the master the amount found due. Judge Hudson had jurisdiction in the case in which this order was granted. It was not appealed from, nor were any steps taken by the appellant here, to have it vacated. Under these circumstances, he was‹ not warranted in disregarding and ignoring it, whether erroneously granted or not. For the time being at least it was the. order of a competent court in a case in which said court had jurisdiction, and to which the appellant was a party, and at the hearing of which he could have been present had he so desired. It was his duty either to have obeyed, appealed, or in some other way moved to set aside. He could not fold his arms and remain silent. This was a contempt to which no court could submit, and the order to show cause was not only proper, but essential, and necessary for the preservation of the dignity of the court and for the proper administration of justice.

"Where one is served with an order apparently valid, he must· obey it, or at once move to correct it, * * * and on motion to· commit him for contempt in disobeying the order, the only issues to be considered are the excuses for disobeying it, and the regularity of the proceedings had *under the order* by the party seeking to procure the process for a contempt." *Hilton* v. *Patterson*, 18 *Abb.*, 245. "An order for an injunction, &c., &c., however erroneously or irregularly obtained, must be implicitly observed so long as it exists. A party affected by it cannot disregard it or treat it as a nullity, but must have it discharged on proper application. A man who does not obey it to the letter, so long as it exists, is guilty of a contempt," &c., &c. *Kerr on Injunctions*, 638. And in *Earle* v. *Stokes* (5 *S. C.*, 339), where a party had been committed because he had refused to be sworn touching his property, although it was admitted that the order had been obtained irregularly, this court said : "The defendant could not treat the order as a nullity and disregard it. It was made by the Court of Common Pleas in term, and even if the authority of the court, as regards orders of that class, is to be regarded as founded on stated powers that must be strictly pursued, still that order, being made by a court of general original jurisdiction, the presumption that it was rightfully done, arising

out of the nature of the powers of the court, could only be removed on a proper application to vacate the rule. The defendant is not, therefore, in a position to assert the invalidity of the original order."

Now, it is not entirely clear upon what ground Judge Aldrich made the rule absolute and ordered the arrest of the appellant—whether because appellant had disobeyed the order of Judge Hudson directing him to pay the money to the master, or because he had ignored the order of Judge Fraser to show cause why he should not be attached for disobeying said order, both of which orders he had utterly ignored. Appellant's counsel has assumed in his argument that Judge Aldrich's order was based upon appellant's refusal to obey the order of Judge Hudson, and he contests the legality of said order, on the ground that such an order under the modern equity practice was unauthorized. Doubtless appellant's counsel is correct as to the basis of the order of Judge Aldrich, and possibly he may be correct as to the modern equity practice of enforcing money decrees. But in our view of this case, this last question cannot be raised here by the appellant, on the authority of the cases cited *supra*, and especially the case of *Earle* v. *Stokes*, *supra*, no appeal or motion of any kind to vacate said order having been taken at the time it was made. Nor do his exceptions in his appeal here question directly the propriety or legality of the order of Judge Hudson. We do not, therefore, regard that order as before us.

But the question is, was the order of arrest and commitment until the money was paid to the master such an order as the contempt warranted? It was said in the case of *Earle* v. *Stokes*, *supra*, "that the Court of Common Pleas has always had power to enforce obedience to its lawful mandates by imprisonment until compliance," except in cases where the constitution interferes with this right by forbidding imprisonment for debt, thereby rendering illegal an order of imprisonment intended to enforce the payment of a debt. Now, the order of Judge Aldrich commits the appellant to the common jail until the amount found due the estate of his testator is paid over to the master. And it seems to us that the intent of the order of imprisonment was to secure and enforce the payment of this debt, and in that view was imprison-

ment for debt, in violation of the constitutional inhibition on that subject, and therefore to that extent erroneous. No doubt, the appellant was in contempt,. and he is subject to punishment therefor, but not to imprisonment for the debt which had been established against him.

It is the judgment of this court, that the judgment below be reversed, and that the case be remanded for such further proceeding as to the court below may seem advisable in the matter of the contempt of the appellant.